# Immigration and Naturalization Service
## Participation in Computer Matching Program
### with Department of Education

The Immigration and Naturalization Service has legal authority to participate in a computer matching program with the Department of Education in order to verify the immigration status of alien applicants for federal student aid under Title IV of the Higher Education Act of 1965.

September 21, 1992

MEMORANDUM OPINION FOR THE SECRETARY
DATA INTEGRITY BOARD

You requested our opinion whether the Immigration and Naturalization Service ("INS") has legal authority to participate in a computer matching program with the Department of Education ("Education") involving alien applicants for federal student aid under Title IV of the Higher Education Act of 1965. As explained in more detail below, we conclude that INS does have legal authority to participate in the matching program at issue.

## I.

Pursuant to section 4 of the Computer Matching and Privacy Protection Act of 1988 ("Act"), 5 U.S.C. § 552a(u)(1), the Attorney General established the Data Integrity Board ("Board") to oversee the Justice Department's implementation of the Act. See Att'y Gen. Order No. 1351-89 (June 7, 1989). The Act requires the Board to review and approve all written agreements that provide for the disclosure of Department records, including INS records, through computer matching programs. 5 U.S.C. § 552a(u)(3)(A).[1] The review

---

[1] As defined in the Act, the term "matching program" means

any computerized comparison of . . . two or more automated systems of records or a system of records with non-Federal records for the purpose of . . . establishing or verifying the eligibility of, or continuing compliance with statutory and regulatory requirements by, applicants for, recipients or beneficiaries of, [or] participants in . . . assistance or payments under Federal benefit programs.

5 U.S C. § 552a(a)(8).

and approval process is intended to ensure compliance with relevant statutory and regulatory requirements. *Id.* One of those requirements is that the agreement "specify[] . . . the purpose and legal authority for conducting the [matching] program." *Id.* § 552a(*o*)(1)(A).

In February 1990, the Board approved a matching agreement between INS and Education that gave Education access to the INS-created Alien Status Verification Index ("ASVI") for the purpose of verifying that each alien applying for or receiving federal student aid is eligible for such assistance under 20 U.S.C. § 1091(a)(5).[2] Before granting its approval, the Board requested that INS and Education provide the Board with the "legal authority" for their participation in the program. INS relied upon section 103 of the Immigration and Nationality Act ("INA"), which charges the Attorney General "with the administration and enforcement of [the INA] and all other laws relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a). With minor exceptions not relevant here, the Attorney General has delegated the authority conferred upon him by section 103 to INS. 28 C.F.R. § 0.105(a).

In its initial approval of the INS-Education matching agreement and in a subsequent annual review of the agreement, the Board expressed reservations about the sufficiency of section 103 as authority for INS participation in the program. The Board stated its view that section 121 of the Immigration Reform and Control Act of 1986 ("IRCA"), Pub. L. No. 99-603, 100 Stat. 3359, 3384-94, may have "superseded" section 103 of the INA, at least with respect to matching programs such as the one between INS and Education. If INS lacks statutory authority to participate in the matching program, the Board cannot continue to approve the INS-Education matching agreement.

## II.

The Board's reservations about INS's authority to participate in the matching program with Education are based on the Board's concern that the Act prohibits all computer matching programs that are not supported by *specific* legal authority, that is, a statute that specifically refers to, and affirmatively authorizes, the matching program at issue. We conclude that this concern is unfounded. As explained below, the Act requires only that there be legal authority for a source agency to disclose information to a recipient agency

---

[2] Section 1091(a)(5) provides that in order to receive any federally funded grant, loan, or work assistance, a student must

> be a citizen or national of the United States, a permanent resident of the United States, in the United States for other than a temporary purpose and able to provide evidence from [INS] of his or her intent to become a permanent resident, or a permanent resident of the Trust Territory of the Pacific Islands, Guam, or the Northern Mariana Islands.

without violating the Privacy Act's general prohibition against disclosures of records absent written consent of the persons to whom the records pertain.[3]

Neither the Act itself nor any other legislation of which we are aware can reasonably be read to require that there be specific statutory authority for a matching program in order for an agency to conduct such a program in accordance with the Act. Although the Act mandates that a matching agreement "specify[]" the legal authority for conducting the matching program, 5 U.S.C. § 552a(*o*)(1), that requirement is procedural, not substantive. If the statute required agencies to identify "specific" legal authority for conducting a matching program, an argument might be made that explicit statutory authority was required for the particular program in question. *See Black's Law Dictionary* 1398 (6th ed. 1990) (defining "specific" as "[p]recisely formulated or restricted; definite; explicit; of an exact or particular nature"). The term "specify[]," however, does not modify "legal authority." Instead, it merely indicates that the agency must identify *some* legal authority that supports the program. *See id.* at 1399 (defining "specify" as "[t]o mention specifically; to state in full and explicit terms; to point out; to tell or state precisely or in detail; to particularize, or to distinguish by words one thing from another"). Put another way, the term "specify[]" focuses on the nature of the identification, rather than the nature of the thing to be identified.

This reading of the statutory text is supported by the legislative history of the Act, which demonstrates that Congress did not intend to create any additional substantive legal obstacles to the implementation of computer matching programs: "Provided that the new procedures in [the bill] have been complied with, any computer match that was lawful before passage of the bill will continue to be lawful after passage." H.R. Rep. No. 802, 100th Cong., 2d Sess. 22 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3107, 3128.[4] The House Report on the Act further indicates that the "legal authority" that must be specified in a matching agreement is not legal authority for the matching program per se, but authority that confirms the "legality of [the] disclosures that are necessary to support computer matching." *Id.* at 21, *reprinted in* 1988 U.S.C.C.A.N. at 3127. Thus, the House Report observes that "[w]here records are disclosed by one agency to another for use in matching, the

---

[3] The Privacy Act provides in part:
    No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be [consistent with one of twelve enumerated exceptions].
5 U.S.C. § 552a(b).

[4] When Congress intends to require agencies to obtain specific authorization in order to engage in a particular activity that is otherwise within their authority, it does so explicitly. For example, in drafting the provisions that govern the temporary or intermittent employment of experts and consultants, Congress specifically provided that an agency may procure the services of experts and consultants only when "authorized by an appropriation or other statute." 5 U.S.C. § 3109(b). Similarly, although an agency might possess general authority to pay publicity experts in furtherance of its statutory mission, Congress has explicitly barred such payment unless funds are "specifically appropriated for that purpose." *Id.* § 3107.

normal *legal authority* for the disclosure comes from a routine use [as provided in 5 U.S.C. § 552a(b)(3)]."[5] *Id.* (emphasis added).

Because the legality of disclosures of agency records is generally determined by reference to the exceptions set forth in 5 U.S.C. § 552a(b), the "legal authority" required by 5 U.S.C. § 552a(*o*)(1) is the particular exception under which disclosure is authorized. *See* Office of Management and Budget, Privacy Act of 1974; Final Guidance Interpreting the Provisions of Public Law 100-503, the Computer Matching and Privacy Protection Act of 1988, 54 Fed. Reg. 25,818, 25,825 (1989) ("[B]ecause the Matching Act does not itself authorize disclosures from systems of records for the purposes of conducting matching programs, agencies must justify any disclosures under [the Privacy Act, 5 U.S.C. § 552a(b)].").[6] In the case of the INS-Education matching program, the relevant exception is the routine use exception set forth in paragraph (3) of 5 U.S.C. § 552a(b). *See supra* note 5. The program requires INS to disclose records from the ASVI to Education. Consistent with 5 U.S.C. § 552a(a)(7), using the ASVI to verify the immigration status of applicants for or recipients of federal benefits is "compatible" with the purpose for which the ASVI was created. Indeed, it is *the* central purpose of the ASVI. As enacted by section 121(a)(1)(C) of IRCA, 42 U.S.C. § 1320b-7(d)(3) requires the states, in determining eligibility for federally funded benefit programs, to demand proof of satisfactory immigration status and to "utilize the individual's alien file or alien admission number to verify with [INS] the individual's immigration status through an automated or other system." In section 121(c)(1) of IRCA, 100 Stat. at 3391, Congress directed INS to "implement a system for the verification of immigration status under [section 1320b-7(d)(3)]." That automated system is the ASVI.

Consistent with 5 U.S.C. § 552a(e)(4)(D), INS published a notice in the Federal Register to inform the public that states and federal agencies would make use of the ASVI to verify the immigration status of applicants for federal benefit programs. *See* Verification of Immigration Status of Aliens Applying for Benefits Under Certain Programs, 54 Fed. Reg. 5556 (1989). INS also published specific notice of the INS-Education computer matching program. *See* 55 Fed. Reg. 5904 (1990). Because the INS-Education matching program meets the requirements of the routine use exception set forth in

---

[5] The routine use exception to the general rule against the nonconsensual disclosure of agency records applies when the disclosure would be "for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section." 5 U.S.C. § 552a(b)(3). Under subsection (a)(7), "the term 'routine use' means, with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected." Subsection (e)(4)(D) requires that when an agency establishes or revises any system of records, it must publish a notice in the Federal Register that includes "each routine use of the records contained in the system, including the categories of users and the purpose of such use."

[6] The OMB guidelines further state that "[s]ince the Computer Matching Act provides no independent authority for the operation of matching programs, agencies should cite a specific Federal or State statutory or regulatory basis for undertaking such programs." *Id.* at 25,826. That the "basis" for a matching program may include a *state* statute or a federal or state *regulation* provides additional support for the view that the Act should not be interpreted to require agencies to identify specific federal statutory authority for matching programs.

162

5 U.S.C. § 552a(b)(3), there is "legal authority" for the matching program within the meaning of 5 U.S.C. § 552a(*o*)(1)(A).[7]

Section 121 of IRCA does not alter these conclusions. Section 121(a)(3) would have required educational institutions participating in federal student assistance programs under Title IV of the Higher Education Act of 1965 to utilize an applicant's "alien file or alien admission number to verify with [INS] the individual's immigration status through an automated or other system." 20 U.S.C. § 1091(h)(3). Institutions using the verification system would have been required to abide by certain procedures designed to protect applicants from erroneous verifications. *See id.* § 1091(h)(4)-(6). Section 121(c)(4)(B) of IRCA, however, gave Education authority to waive the application of IRCA to Title IV programs not later than April 1, 1988, if Education determined that the costs of administering the verification system otherwise required by IRCA would exceed the estimated savings generated by the system.[8] By letter dated March 28, 1988, Education informed Congress of its decision to exercise this waiver authority.

You have asked whether, consistent with the statutory framework, Education can waive the procedural requirements of section 121(a)(3) of IRCA but still use the ASVI, which was implemented pursuant to section 121(c)(1) of IRCA. You suggest that despite the waiver by Education, INS may be constrained to permit access to the ASVI only in accordance with the specific procedures prescribed by section 121. A contrary conclusion, you argue, would be inconsistent with Congress's decision to include student aid programs in section 121 of IRCA and thereby to subject them to that statute's procedural requirements.

---

[7] The INS-Education matching program is also consistent with the general statutory authority of the two agencies. The object of the program is to see that federal student assistance is not granted to persons who are not eligible under 20 U.S.C. § 1091(a)(5). *See supra* note 2. It is appropriate for INS to pursue this object because section 1091(a)(5) is a law "relating to the immigration and naturalization of aliens" such that it may be enforced by INS pursuant to section 103 of the INA, 8 U.S.C. § 1103(a). It is appropriate for Education to pursue this object because section 1091(a)(5) is part of Title IV of the Higher Education Act of 1965, and because Education funds and, in conjunction with institutions of higher education, administers programs authorized by Title IV. *See* 20 U.S.C. §§ 1070(b), 1072(a)(1), 1087b(a), 1087aa(a).

[8] Section 121(c)(4)(B), 100 Stat. at 3392, provides:

If, with respect to [the system of grants, loans, and work assistance under Title IV of the Higher Education Act of 1965], the [Secretary of Education] determines, on the Secretary's own initiative or upon an application by an administering entity and based on such information as the Secretary deems persuasive . . . , that --

(i) [the Secretary] or the administering entity has in effect an alternative system of immigration status verification which —

(I) is as effective and timely as the system otherwise required under the amendments made [to 20 U.S.C. § 1091] with respect to the program, and

(II) provides for at least the hearing and appeals rights for beneficiaries that would be provided under [such amendments], or

(ii) the costs of administration of the system otherwise required under such amendments exceed the estimated savings,

[the] Secretary may waive the application of such amendments to the covered program to the extent (by State or other geographic area or otherwise) that such determinations apply.

163

We conclude that Education's waiver unequivocally relieves it of the obligation to comply with the procedural requirements of section 121 and that, in the present circumstances, INS may share ASVI-generated data on federal student aid applicants with Education without requiring Education to comply with section 121. Congress's decision to include federal student assistance programs among the programs covered by section 121 was conditional. Although section 121(a)(3) requires each "institution of higher education" to obtain data on immigration status directly from INS, Congress gave Education express authority to waive this requirement if it found, "based on such information as [Education] deem[ed] persuasive," that the cost of institution-by-institution access to the ASVI would exceed the benefits of such access. *See supra* note 8. That is, Congress granted Education the authority to determine whether federal student aid programs should be included in section 121.

Once Education decided to waive the requirements of section 121(a)(3), however, it still faced the problem of enforcing, in a cost-effective manner, the mandate of 20 U.S.C. § 1091(a)(5) that federal student assistance be granted only to aliens in a satisfactory immigration status. *See supra* note 2. A computer matching program granting ASVI access to Education alone, rather than to every one of the thousands of educational institutions around the country, was Education's preferred solution. Nothing in section 121 of IRCA prohibits INS from granting access to the ASVI in these circumstances. Moreover, the institution-by-institution access to the ASVI contemplated by section 121 and the Education-only access established by the INS-Education matching agreement are quite different, precluding the inference that if Congress intended to regulate the former, it must have intended to regulate the latter. That Education need not comply with section 121(a)(3) of IRCA does not mean that federal student aid applicants lack procedural protections against erroneous determinations of their immigration status by the ASVI, because the Computer Matching and Privacy Protection Act sets forth procedures similar to those set forth in section 121(a)(3) that agencies must follow with respect to persons who are subject to matching programs. *See* 5 U.S.C. § 552a(p).

IIII.

We conclude that INS does have legal authority to participate in a computer matching program with Education in order to verify the immigration status of alien applicants for federal student aid under Title IV of the Higher Education Act of 1965.

JOHN E. BARRY
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

164